**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Mark M. Skiba,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18 C 3381 |
| ) | |
| ) | Judge Ronald A. Guzmán |
| **Illinois Central Railroad Company,** ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court denies Defendant's motion to dismiss [31].

## STATEMENT

**Facts**

The following facts as alleged in Plaintiff's amended complaint are taken as true for purposes of the instant motion to dismiss. Plaintiff held several positions at Illinois Central after being hired in July 2008, and was assigned to the position of Clerk in October 2013. Subsequently, Plaintiff's manager directed Plaintiff to submit to a drug test pursuant to Department of Transportation ("DOT") regulations. Plaintiff objected, but took the test after being told he would be suspended for insubordination if he did not. Despite having taken the test, he was suspended for two weeks for insubordination. During his suspension, he received a letter from Illinois Central stating that the drug-test result was positive and that his suspension had been extended to six months. On November 20, 2013, hearings were conducted on the insubordination and positive drug-test charges. On December 2, 2013, Doug Townsend, a manager for Illinois Central, reviewed the hearing transcript and imposed a six-month suspension for the positive drug test and a two-week suspension for insubordination, which were to run consecutively.

Plaintiff was cleared to return to his Clerk position on May 9, 2014 and was advised by a Senior Manager that prior to returning to his job, he had to submit to a "return-to-duty direct-observation strip-search test" – apparently to test for drugs. Plaintiff believed he did not need to submit to the test because his Clerk position was not DOT regulated, but he complied, and the drug test came back negative. On May 14, 2013, Plaintiff reported to his Senior Manager for his first day back on the job. She told him to "go back to the clinic for another DOT pre-employment test, direct observation and strip search." (Am. Compl., Dkt. # 26, ¶ 30.) Plaintiff asked his Senior Manager why he needed to take the test again given that his job was not a DOT safety-sensitive position. After some conversation back and forth, the senior Manager told

Plaintiff that if he did not take another test, he would be terminated. Plaintiff alleges that he submitted to the test under protest, and the results came back negative. Plaintiff reported the Senior Manager's actions to the Federal Railway Administration ("FRA"), which conducted an investigation and cited and fined Illinois Central for violating unspecified FRA and DOT regulations.

In October 2014, Plaintiff moved within Illinois Central to a position as a material handler, which required him to operate a forklift and inventory parts. Between October 2014 and July 2016, Plaintiff was subjected to 23 direct-observation strip-search tests even though his position was not safety sensitive, according to DOT regulations. In addition, starting in January 2016, Plaintiff was required to undergo monthly alcohol tests. After again complaining to the FRA, Illinois Central was cited with four violations and fined. Each time Plaintiff underwent a strip search, he was required, in front of a male employee who was conducting the test, to pull down his pants and underwear, raise his shirt above his chest, and turn 360 degrees so the collector could purportedly search him for prosthetic devices. The collector then watched as Plaintiff urinated in a cup. Plaintiff sues Illinois Central, alleging a state-law claim of intrusion upon seclusion.

**Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citation and internal quotation marks omitted). When deciding a Rule 12(b)(6) motion, the court accepts as true all of the complaint's factual allegations, "drawing all permissible inferences in the plaintiffs' favor." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811 (7th Cir. 2018).

**Analysis**

In holding that Illinois recognizes the tort of intrusion upon seclusion, the Illinois Supreme Court defined it as follows: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 424 (Ill. 2012) (quoting Restatement (Second) of Torts § 652B (1977)) (internal quotation marks omitted). Illinois Central contends that Plaintiff cannot state a claim because Plaintiff essentially consented to the intrusion by continuing to subject himself to the drug tests knowing what they entailed. Illinois Central analogizes Plaintiff's claim to the purported false imprisonment of an employee, where "[v]oluntary consent to confinement nullifies a claim of false imprisonment," and "consent is not invalidated even if an employee is threatened with discharge." *Hanna v. Marshall Field & Co.*, 665 N.E.2d 343, 349 (Ill. App. Ct. 1996). The Court, however, is unwilling to apply this principle to the recently-recognized claim of intrusion upon seclusion without a more fulsome discussion of the applicable law and further development of the record.

2

Illinois Central also contends that even assuming Plaintiff has stated a claim for intrusion upon seclusion, certain of the alleged conduct is barred by the statute of limitations. "Illinois courts have not definitively established the proper statute of limitations applicable to intrusion upon seclusion claims." *Meehan v. Loyola Univ. of Chi.*, No. 16 C 10481, 2017 WL 2424225, at *5 (N.D. Ill. June 5, 2017). Illinois Central argues it should be two years because intrusion upon seclusion is a form of personal injury, which in Illinois has a two-year limitations period. *See Jordan v. United States*, No. 18 C 1100, 2018 WL 5024054, at *2 (S.D. Ill. Oct. 17, 2018). Plaintiff disagrees and contends that a five-year limitations period applies. *See Johnson v. Northshore Univ. Healthsystem*, No. 1-10-0399, 2011 WL 10069086, at *2 (Ill. App. Ct. Mar. 31, 2011) (rejecting contention that the one-year limitations period applicable to "[a]ctions for slander, libel or for publication of matter violating the right of privacy" applied to intrusion upon seclusion claims and implying, but not holding, that the catch-all five-year limitations period applied to intrusion upon seclusion) (citing 735 ILCS 5/13–205 ("[A]ll civil actions not otherwise provided for shall be commenced within 5 years next after the cause of action accrued.")).

Again, the parties have not engaged in an in-depth analysis of the issue in their briefs. Moreover, the statute of limitations is an affirmative defense that need not be anticipated in a complaint. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.") (citation and internal quotation marks omitted). Given the uncertain state of the law, the parties' relatively superficial discussion of the issue, and the procedural posture of the case, the Court denies, at this time, the motion to dismiss certain aspects of Plaintiff's claim as time-barred.

**Date**: December 13, 2018

**Ronald A. Guzmán**
**United States District Judge**